UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SINDY M. WHITMIRE,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of the Social Security Administration,<br><br>　　　　　　Defendant. | CASE NO. 10cv5895-BHS-JRC<br><br>REPORT AND<br>RECOMMENDATION ON<br>PLAINTIFF'S COMPLAINT<br><br>NOTED FOR: February 17, 2012 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. (<u>See</u> ECF Nos. 15, 16, 19).

The ALJ failed to give specific and legitimate reasons for her failure to credit fully the opinions of Drs. Borus and Schneider regarding plaintiff's functional impairments. She also failed to give germane reasons to discount the lay statement from Ms. Clinton.

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 1

For these reasons, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings.

## BACKGROUND

Plaintiff, SINDY M. WHITMIRE, was born in 1963 and was forty-three years old on her alleged disability onset date of March 9, 2007 (Tr. 147). She attended school through her sophomore year of high school (Tr. 44). She did not obtain a GED or any vocational education or training (id.). She had jobs waitressing and bartending (Tr. 45). Her last employment was in 2007 for a small family restaurant (id.). Plaintiff testified about a number of short-term jobs, but regarding her work history she testified that her "perception at times is not real good" and she cannot remember the details of some of her work history (Tr. 46). She testified that she was no longer able to work because her "leg doesn't allow it" (Tr. 53-54). Plaintiff testified regarding her three leg surgeries, in 2000, 2002 and 2008 or 2009 (Tr. 54).

Plaintiff also testified about sleep problems that she was experiencing (Tr. 59-60). She testified that she typically will sleep for an hour, then be awake for an hour, on an alternating basis (Tr. 59). She estimated that she sleeps for about four hours a night (Tr. 60).

Regarding her daily activities, she testified that she does "nothing, other than staying at home" (Tr. 67). However, she also testified that she went "on a regular basis to the gym four days a week" (Tr. 68). At the gym, she walked on the treadmill and other "general muscle building exercises for [her] knee" and thigh (id.). She testified that she

was doing an hour-and-a-half of exercise a day in August, 2008 and used to walk two miles a day in February, 2009 (Tr. 68-69).

## PROCEDURAL HISTORY

Plaintiff filed for Social Security and Supplemental Income disability benefits on April 12, 2007, alleging disability since March 9, 2007 (Tr. 147-57). Her applications were denied initially and following reconsideration (Tr. 98-104, 106-10). Her requested hearing was held before Administrative Law Judge Catherine R. Lazuran ("the ALJ") on January 14, 2010 (Tr. 40-88). On April 29, 2010, the ALJ issued a written decision in which she found that plaintiff was not disabled pursuant to the Social Security Act (Tr. 13-28).

On October 4, 2010, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). See 20 C.F.R. § 404.981. In December, 2010, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision (see ECF Nos. 1, 4). On April 6, 2011, defendant filed the sealed administrative record in this matter ("Tr.").

In her Opening Brief, plaintiff challenges the ALJ's evaluation of: (1) the medical evidence (2) plaintiff's credibility; (3) lay testimony; (4) plaintiff's residual functional capacity; and, (5) the vocational expert testimony (see ECF No. 15). Plaintiff also requests that if this matter is remanded, that it be remanded to another Administrative Law Judge (see id., pp. 18-19).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole,

weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (1996) (per curiam) (*quoting* Andrews, supra, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (other citation omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion. Stout, supra, 454 F.3d at 1054-55 (reviewing legal errors found to be harmless).

## DISCUSSION

1. The ALJ did not evaluate properly the medical evidence.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist.

Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, supra, 157 F.3d at 725 (*citing* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). However, the ALJ "need not discuss *all* evidence presented." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, supra, 81 F.3d at 830 (citations omitted); see also 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. Lester, supra, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan, supra, 242 F.3d at 1149 (*citing* Magallanes, supra, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set

forth specific, *legitimate* reasons that are supported by substantial evidence in the record." Van Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* Lester, supra, 81 F.3d at 831).

According to Social Security Ruling ("SSR") 96-8p, a residual functional assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20.

    a. Physical Impairments

Dr. Todd A. Borus, M.D. ("Dr. Borus") examined and evaluated plaintiff for knee pain on May 18, 2007 (see Tr. 361-63). He observed that she had "mild patellofemoral crepitus and positive grind test," as well as tenderness and "bogginess over this area" (Tr. 362). Dr. Borus also assessed plaintiff's radiographs (X-rays) and indicated that plaintiff had "moderate medial compartment degeneration with joint space narrowing and subchondral sclerosis," which he opined had increased since her previous radiographs (Tr. 363). He recommended use of a medial unloader brace during activity (id.).

On July 10, 2008, Dr. Borus provided a physical capacities evaluation regarding plaintiff's abilities and limitations (see Tr. 540-41). Among other things, Dr. Borus indicated that plaintiff could stand or walk for a half hour to an hour at a time, and could stand or walk for a total of one hour each during an eight-hour day (Tr. 540). He also opined that plaintiff needed to be able to sit and elevate her leg at least three to four times per work day (id.). Finally, Dr. Borus opined that plaintiff could bend only occasionally, and never could squat, crawl or climb (Tr. 541).

The ALJ failed to give any reason in support of her failure to adopt Dr. Borus' opinions regarding plaintiff's functional limitations (see Tr. 25). Although defendant contends that the ALJ credited the opinion of the non-examining State agency consultant over that of examining physician Dr. Borus, the ALJ's written decision does not reflect that contention. See Bray, supra, 554 F.3d at 1226-27 ("[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking"). In fact, the ALJ indicated that she was giving the opinions of Dr. Borus weight (see Tr. 25).

Even if the ALJ explicitly credited the opinions of the non-examining physician over those of the examining physician, the opinion of an examining physician normally is given greater weight than one of a non-examining physician and for the ALJ to fail to do so requires that the ALJ "set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." See Van Nguyen, supra, 100 F.3d at 1466. Here, the ALJ gave no reason to fail to credit the opinions of Dr. Borus regarding plaintiff's functional limitations, such as that she could bend only occasionally (see Tr. 541).

According to Social Security Ruling ("SSR") 96-8p, if a residual functional capacity ("RFC") assessment by the ALJ "conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20. Here, the ALJ failed to explain why her RFC determination did not include all of the functional limitations of plaintiff as assessed by Dr. Borus -- thereby committing legal error. See id. The Court concludes that the ALJ did not explain her

interpretations of the conflicting evidence sufficiently. See Reddick, supra, 157 F.3d at 725; Magallanes, supra, 881 F.2d at 751. For these reasons, this matter should be reversed and remanded to the Commissioner for further administrative proceedings. See Van Nguyen, supra, 100 F.3d at 1466; Bayliss, supra, 427 F.3d at 1214 n.1.

b. Mental impairments

Dr. Robert E. Schneider, Ph.D. ("Dr. Schneider") examined and evaluated plaintiff on May 15, 2007 (see Tr. 320-27); on October 30, 2007 (see Tr. 491-97); and, on July 1, 2008 (see Tr. 531-38). On May 15, 2007, Dr. Schneider opined that plaintiff presented as slow and agitated and that her test results indicated that she "would have difficulty tolerating even minimal stress and demand" (Tr. 323). He also assessed that her test results also indicated that she had "very limited psychological energy," suggesting that she "would have difficulty maintaining a competitive pace if working" (id.). Dr. Schneider assessed plaintiff's global assessment of functioning ("GAF") at 39 (id.). He opined specifically that plaintiff was markedly impaired in her ability to exercise judgment and make decisions; to interact appropriately in public contacts; and, to respond appropriately to and tolerate the pressure and expectations of a normal work setting (Tr. 326). At this appointment, he assessed that she would be impaired to this degree from a minimum of six months to an estimated maximum of eight months (Tr. 327).

On October 30, 2007, Dr. Schneider indicated similar opinions (see Tr. 491-97). He opined that she "would have difficulty following and retaining multi-step instructions due to her agitation, [and] would have difficulty sustaining the necessary concentration and persistence for a job due to her agitation and she would not be capable of tolerating

the typical stresses and demands of gainful employment" (Tr. 493). Dr. Schneider assessed plaintiff's GAF at 43 (id.). He again opined specifically that plaintiff was markedly impaired in her ability to exercise judgment and make decisions; to interact appropriately in public contacts; and, to respond appropriately to and tolerate the pressure and expectations of a normal work setting (Tr. 496). However, he assessed that her impairments would be longer-lasting than he had assessed previously, opining that she would be impaired to the degree assessed from eight month to ten months (Tr. 497).

On July 1, 2008, Dr. Schneider concluded that petitioner had made little improvement and reiterated his assessment that plaintiff would be impaired to the degree assessed at a minimum of eight months to a maximum of ten months (see Tr.538). He added at this assessment that she did "not appear to encode information very readily, presenet[ed] with low energy and [wa]s likely to have significant difficulties tolerating the typical pressures of employment or maintaining necessary pace and persistence" (Tr. 534). Dr. Schneider assessed plaintiff's GAF at 42 at the July, 2008 appointment (id.). At this evaluation, Dr. Schneider opined that plaintiff suffered from marked functional limitations only in her ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting (Tr. 537).

The ALJ included the following discussion regarding Dr. Schneider's opinions:

> Dr. Schneider indicated the claimant experienced mild to moderate limitations, with the exception of her ability to exercise judgment and make decisions, to interact appropriately in public contacts, and to respond appropriately to and tolerate the pressure and expectations of a normal work setting. Further, he estimated the claimant would remain impaired for between six to eight months (internal citation to Exhibit 6F). The undersigned gives some weight to Dr. Schneider's narrative

> opinion, but declines to give weight to his GAF estimate. This is so because it is not consistent with the record as a whole and it appears the doctor did not expect claimant's limitations to last for a month or more.

(Tr. 25).

There are two flaws in this assessment by the ALJ. First, the ALJ's statement that Dr. Schneider indicated that plaintiff experienced mild to moderate limitations, with some exceptions implies that those are the only limitations assessed (see id.). The ALJ was ambiguous as to whether or not Dr. Schneider opined that plaintiff was not limited with respect to her ability to exercise judgment and make decisions, to interact appropriately in public contacts, and to respond appropriately to and tolerate the pressure and expectations of a normal work setting, when in fact, Dr. Schneider opined that plaintiff suffered from a marked degree of limitation in these areas (see Tr. 326). This is significant, probative evidence that the ALJ erred in failing to discuss explicitly. See Vincent, supra, 739 F.2d at 1394-95.

The second error in this discussion of Dr. Schneider's opinions was the ALJ's indication that she was declining to give his global assessment of functioning ("GAF") any weight because "it appears the doctor did not expect claimant's limitations to last for a month or more" (Tr. 25). There does not appear to be any indication in the record that Dr. Schneider ever opined that plaintiff's limitations would last only for a month or more. In fact, Dr. Schneider increased the minimum duration of the degree of limitation plaintiff would suffer from six months at his May, 2007 evaluation to eight months at his October, 2007 evaluation (see Tr. 327, 497). In July, 2008, Dr. Schneider reiterated his opinion that plaintiff would be impaired to the degree indicated for a minimum of eight

months (Tr. 538). Cumulatively, Dr. Schneider documented claimant's limitations for a period of over two and one half years -- significantly greater than the "year or more" set forth in the ALJ's decision.

Although the ALJ found that Dr. Schneider's GAF estimate was "not consistent with the record as a whole," the ALJ does not provide any specific evidence from the record with which Dr. Schneider's GAF estimate was not consistent (see Tr. 25). Nothing in the quoted discussion by the ALJ amounts to "specific and legitimate reasons that are supported by substantial evidence in the record" for the ALJ's failure to credit fully Dr. Schneider's opinions, including his initial May, 2007 GAF estimate. See Lester, supra, 81 F.3d at 830-31. However, the ALJ relied on these same reasons "stated above" to justify her failing to give any weight to Dr. Schneider's subsequent GAF estimates (see Tr. 25).

The ALJ did not specify any reason why she gave only "some weight" to Dr. Schneider's narrative opinions, and did not discuss Dr. Schneider's opinion that plaintiff suffered marked impairments in her ability to exercise judgment and make decisions; to interact appropriately in public contacts; and, to respond appropriately to and tolerate the pressure and expectations of a normal work setting (Tr. 326). Dr. Schneider's opinions regarding plaintiff's marked functional limitations are significant, probative evidence that the ALJ erred in failing to discuss. See Vincent, supra, 739 F.2d at 1394-95. Because of the errors committed by the ALJ in her assessment of Dr. Schneider's opinions, his opinions should be evaluated anew following remand of this matter. See id.

2. Plaintiff's credibility should be assessed anew following remand.

The medical evidence is considered when assessing a claimant's credibility and determining the intensity and persistence of plaintiff's symptoms. See 20 C.F.R. § 404.1529(c). In this matter, the Court already has determined that the ALJ's evaluation of the medical evidence was not proper, see supra, section 1. The symptoms suffered by plaintiff due to her physical and mental impairments were not considered appropriately by the ALJ due to errors in the assessment of the medical evidence. For these reasons and based on the relevant record, the Court concludes that plaintiff's credibility and her testimony regarding her symptoms must be evaluated anew following remand.

3. Although the ALJ evaluated properly the lay statement by plaintiff's mother, the ALJ did not evaluate properly all of the lay evidence.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," see 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources," see 20 C.F.R. § 404.1513 (d)(4), and "other sources" such as nurse practitioners and naturopaths, who are considered other medical sources, see 20 C.F.R. § 404.1513 (d)(1). See also Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d), (d)(3)). An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." Turner, supra, 613 F.3d at 1224 (*citing* Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)); see also Van Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). This is

because "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

        a.  Ms. Patricia Kennedy, plaintiff's mother ("Ms. Kennedy")

Ms. Kennedy, plaintiff's mother, provided lay evidence about plaintiff (see Tr. 225-34). Ms. Kennedy indicated that she lived about 200 miles away from her daughter and that she saw her daughter about twice a year (Tr. 225). Ms. Kennedy opined that plaintiff's impairments affected plaintiff's ability to function in a variety of ways, including affecting plaintiff's lifting, bending, standing, walking, sitting, kneeling and getting along with others (see Tr. 230). Although Ms. Kennedy did not specify to what degree plaintiff was limited, she indicated that when she visited plaintiff, plaintiff "seemed to have trouble doing any activity" (id.).

Initially, the ALJ provided two reasons that the ALJ opined weighed "against considering statements to be strong evidence in favor of finding the claimant disabled" (Tr. 24). The ALJ indicated that the lay observations "cannot be objectively verified with any reasonable degree of certainly" and that "it is difficult to attribute them to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this discussion" (id.). Both of these reasons appear to have been applied by the ALJ to both of the lay statements and are not reasons germane to each particular witness. See Turner, supra, 613 F.3d at 1224.

Lay statements generally cannot be objectively verified, yet pursuant to federal regulations and the Ninth Circuit, lay statements nevertheless are competent evidence that should be considered. See Bruce, supra, 557 F.3d at 1115; 20 C.F.R. § 404.1513. Furthermore, the ALJ fails to specify what "other reasons" to which the lay observations can be attributed, if not to plaintiff's medical impairments (see Tr. 24).

However, in failing to credit fully the lay evidence provided by Ms. Kennedy, the ALJ also noted that Ms. Kennedy stated that she only saw plaintiff about two times a year (see id.). In addition, the ALJ assessed that some of Ms. Kennedy's statements (see Tr. 234) were vague and not indicative of total disability (see Tr. 24). Finally, regarding the ALJ's additional finding that Ms. Kennedy "did not know much about [plaintiff's] activities" (id.), the Court notes that Ms. Kennedy replied to many of the relevant questions with the answer "don't know" (see Tr. 225, 226, 227, 228, 229, 230, 231). For these reasons and based on the relevant record, the Court concludes that the ALJ provided germane reasons for failing to credit fully the opinions in the lay statement from Ms. Kennedy. See Bruce, supra, 557 F.3d at 1115. However, in light of the Court's recommendation that this matter be reversed for further consideration of the medical testimony and petitioner's credibility, it would be appropriate for the ALJ also to reconsider the lay testimony in light of the other reevaluated evidence.

    b. Ms. Sherese Clinton, plaintiff's friend ("Ms. Clinton")

Ms. Clinton provided a lay statement regarding plaintiff (see Tr. 208-16). She indicated that she had known plaintiff for twenty years and saw plaintiff twice a week and when plaintiff had a doctor's appointment (Tr. 208). She indicated that plaintiff

didn't style or color her hair anymore (Tr. 209) and required frequent reminders regarding taking medication (Tr. 210). Ms. Clinton indicated that plaintiff did not do house or yard work because of her depression and because she was unable physically (Tr. 211), and Ms. Clinton further specified functional limitations (Tr. 213). Ms. Clinton opined that plaintiff had been fired or laid off from a job because of problems getting along with others, due to plaintiff's "explosive" personality (Tr. 214).

The ALJ found that Ms. Clinton's statement was "of limited relevance" because of the fact that the statement was provided a few months after plaintiff's date of alleged onset of disability (Tr. 24). The ALJ fails to explain why a statement including opinions about the functioning of plaintiff in the present tense (see, e.g., Tr. 215) was of limited relevance due to the fact that it was provided a few months into the relevant time frame of plaintiff's period of alleged disability (see Tr. 24). If the ALJ believed that the record was ambiguous as to whether or not the statement was still relevant, she had a duty to develop the record and request an updated opinion. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

The ALJ additionally found that what was relevant was that Ms. Clinton "said claimant 'fakes how she is to doctors and others . . . .'" (Tr. 24). The ALJ assessed that this opinion by Ms. Clinton "was vague but suggests claimant is not very credible" (id.).

The Court observes that in the section for "remarks," Ms. Clinton's handwritten remarks included the statement that "Even though [plaintiff] is in such a terrible state, she fakes how she is to doctors and others so she can try to deny how bad off she is" (Tr.

215). Review of Ms. Clinton's statement demonstrates that Ms. Clinton clearly was indicating that plaintiff down-played the level of her impairments to her doctors and others, in order to remain in denial of "how bad off she is" (id.). The ALJ's implication to the contrary is not supported by substantial evidence. Although this reason may be relevant to plaintiff's credibility, it is not a reason germane to the opinions of Ms. Clinton and whether or not they should be considered.

For the reasons stated and based on the relevant record, the Court concludes that the ALJ erred in her assessment of the lay testimony provided by Ms. Clinton and that Ms. Clinton's testimony should be evaluated anew following remand of this matter. See Bayliss, supra, 427 F.3d 1211 at n.1.

4. Plaintiff's Residual Functional Capacity should be assessed anew following remand of this matter.

The Court already has determined that the ALJ failed to evaluate properly the medical evidence, see supra, section 1. In particular, the Court found that the ALJ's failure to give any reason for failing to credit the opinions of Dr. Borus regarding plaintiff's functional limitations, such as that she could bend only occasionally (see Tr. 541), was legal error. Because the ALJ failed to evaluate properly the medical evidence provided by Dr. Borus and because Dr. Borus opined specifically regarding plaintiff's functional limitations, plaintiff's residual functional capacity should be assessed anew following remand of this matter. It is for the ALJ to determine whether or not plaintiff is capable of work given her properly determined functional impairments and residual functional capacity.

5. <u>Plaintiff has not demonstrated that this matter should be assigned to a different ALJ following remand</u>.

Administrative Law Judges, ALJs, "are presumed to be unbiased." <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001). To rebut this presumption, one must show a "conflict of interest or some other specific reason for disqualification." <u>Id.</u> at 857-58 (*citing* <u>Verduzco v. Apfel</u>, 188 F.3d 1087, 1089 (9th Cir. 1999)). Although ALJs occasionally can reveal irritation or anger, "'expressions of impatience, dissatisfaction, annoyance, and even anger that are within the bounds of what imperfect men and women … sometimes display' do not establish bias." <u>Rollins</u>, 261 F.3d at 858 (*quoting* <u>Liteky v. United States</u>, 510 U.S. 540, 555-56 (1994)). Instead, a claimant asserting bias must "show that the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment.'" <u>Rollins</u>, <u>supra</u>, 261 F.3d at 858 (*quoting* <u>Liteky</u>, <u>supra</u>, 510 U.S. at 551).

Here, plaintiff contends that "the language in the ALJ's decision falsely accusing Whitmire of 'engaging in possible malingering,'" causes plaintiff to doubt that the ALJ is capable of fairly considering her disability claim (<u>see</u> Opening Brief, ECF No. 15, pp. 18-19). The ALJ indicated that the record included "statements by doctors suggesting the claimant has exaggerated symptoms and limitations and was engaging in possible malingering or misrepresentation" (Tr. 23 (*citing* Tr. 330, 332, 374, 533)). Although it is true that the doctors' reports included indications that plaintiff potentially was amplifying her symptoms (<u>see</u>, <u>e.g.</u>, Tr. 330) and was endorsing infrequent, unlikely and unrealistic psychiatric symptoms (<u>see</u> Tr. 533), the records cited by the ALJ do not indicate that any

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 18

of the doctors opined specifically that she was malingering (see Tr. 330, 332, 374, 533). In fact, the records cited by the ALJ suggest otherwise: Dr. Bowerly specifically opined that there "was no indication of malingering or factitious disorder" (Tr. 330) and Dr. Schneider opined that plaintiff was considered to be a credible reporter (Tr. 533). However, erroneously concluding that doctors suggested that plaintiff possibly was engaging in malingering, especially when one of them opined that her self-report was unreliable and highly amplified (see Tr. 332), is not behavior that is "'so extreme as to display clear inability to render fair judgment.'" See Rollins, supra, 261 F.3d at 858 (*quoting* Liteky, supra, 510 U.S. at 551).

In addition, plaintiff admits that the ALJ has not demonstrated prejudice in her written decision, but the plaintiff nevertheless "believes that the ALJ's false accusations could result in the ALJ being prejudiced if this case is remanded to her for a new hearing" (see Opening Brief, ECF No. 15, p. 19). Plaintiff has not cited a rule or any caselaw suggesting that this Court should order that a matter be referred to a different judge on a preemptive basis due to fear of potential bias (see id.). In fact, plaintiff fails to provide any citation at all in support of her request for a recommendation that this case be assigned to a different judge.

For the reasons stated and based on the relevant record, the Court concludes that plaintiff has not demonstrated that the ALJ's behavior "was 'so extreme as to display clear inability to render fair judgment.'" See Rollins, supra, 261 F.3d at 858 (*quoting* Liteky, supra, 510 U.S. at 551). Therefore, the Court should not find that this matter must

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 19

be assigned to a different administrative law judge following remand of this matter. See Rollins, supra, 261 F.3d at 858.

CONCLUSION

The ALJ failed to evaluate properly the medical evidence and failed to give specific and legitimate reasons for her failure to credit fully the opinions of Drs. Borus and Schneider regarding plaintiff's functional impairments. The ALJ also erred in her evaluation of the lay evidence provided by Ms. Clinton.

Based on these reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the administration for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on February 17, 2012, as noted in the caption.

Dated this 24th day of January, 2012.

J. Richard Creatura
United States Magistrate Judge